## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

BRIAN CROSS,                                    :
                                                :
               Petitioner,                      :          Civ. No. 17-10430 (RBK)
                                                :
       v.                                       :          **OPINION**
                                                :
PATRICK NOGAN, et al.,                          :
                                                :
               Respondents.                     :
                                                :

---

**ROBERT B. KUGLER, U.S.D.J.**

Petitioner is a state prisoner and is proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.)  Respondents filed an Answer opposing relief, (ECF No. 7.), and despite requesting and receiving an extension to do so, Petitioner did not file a reply. (ECF Nos. 8, 12.)  For the following reasons, the Court will deny the Petition and will not issue a certificate of appealability.

### I.       BACKGROUND

In Petitioner's post-conviction relief ("PCR") appeal, the Appellate Division adopted the following summary of the facts:

> The incident giving rise to the indictment occurred on March 7, 2001[,] in Pleasantville, New Jersey. On [that] date, [defendant] and [Still] visited the home of a friend where [defendant] encountered the victim, as well as other individuals. [Defendant] and [Still] became engaged in a verbal argument with the victim. The argument escalated into a physical confrontation during which the victim was shot three times, once with a .38 caliber weapon and twice with a .22 caliber weapon. The victim was pronounced dead at the scene. An autopsy revealed that the cause of death was the wound the victim sustained from the .38 caliber weapon. During his plea colloquy on March 31, 2008, [defendant] testified that he was the one that possessed the .38 caliber weapon.

*State v. Cross*, No. A-4074-13T2, 2016 WL 3389913, at *1 (N.J. Super. Ct. App. Div. June 21, 2016).

Following the murder of Charles Martin, Petitioner was a fugitive for approximately five years. *Id.* Officers in Missouri took him into custody in March of 2006, "at which time he . . . gave police a false name and made incriminating statements." *Id.*

The Appellate Division summarized the remaining procedural history as follows:

> Following an unsuccessful motion to suppress his statements to police, and immediately before his trial was set to commence on March 31, 2008, defendant pled guilty to an amended charge of first-degree manslaughter, N.J.S.A. 2C:11–4a. In return for defendant's plea, the State agreed to dismiss the remaining nine counts of the indictment. The State further agreed to recommend that defendant be sentenced to twenty-eight years in prison, subject to the eighty-five percent parole ineligibility provisions of the No Early Release Act (NERA).
>
> …
>
> Defendant reserved the right to argue for a lesser sentence. During the plea colloquy, defendant testified that he shot Martin with a .38 caliber handgun, and that he was aware from his review of the discovery that the .38 caliber bullet penetrated Martin's lung, heart, and liver, resulting in his death. Based on defendant's plea testimony, Judge DeLury determined that defendant pled guilty "freely and voluntarily" and "had the advice of competent counsel, with whom he is satisfied." The judge further found that no additional promises had been made to defendant and that he understood the range of sentence to which he was exposed.
>
> On June 5, 2008, Judge DeLury rejected defendant's plea for leniency and sentenced him to the twenty-eight-year prison term subject to NERA requested by the State.

*Cross*, 2016 WL 3389913, at *1–2.  At some point after sentencing, it appears that Petitioner decided to renege on his statements at the plea colloquy. (ECF No. 7-6, at 6, 52 ¶ 15.)  On direct appeal, he alleged that he fired the two non-fatal shots from the .22 caliber handgun, rather than

the fatal shot from the .38 caliber handgun, contrary to his statements—under oath—during his plea hearing. *Id.*

Petitioner also sought to challenge his guilty plea on direct appeal, but later acknowledged that "no formal motion [to withdraw his guilty plea] was ever filed," only that he "intimated" that he wanted to withdraw his guilty plea during sentencing. (*Id.* at 6.)  At sentencing, Petitioner had stated, "I think that [I] can establish that my intent was never to cause any serious[] bodily injury." (*Id.* (quoting ECF No. 7-2, at 30:4–5).)  Nevertheless, at the beginning and end of that sentencing colloquy, Petitioner said, "I accept my plea," and "I would like to say thank you for accepting my plea." (ECF No. 7-2, at 28:22–23, 31:19.)

Although the Appellate Division briefly heard Petitioner's plea withdrawal and ineffective assistance of counsel arguments, that court did not rule on those issues. (ECF No. 7-3, at 13.)  The court observed that Petitioner's plea agreement "included a provision that he would waive the right to appeal any issues except excessive sentence.  So any ineffective assistance of counsel claims and . . . withdrawal of plea [claims] . . . [were] not appropriate." (*Id.* at 15.)  Consequently, the Appellate Division considered only his excessive sentencing arguments and affirmed. *State v. Cross*, No. A–6271–07 (App. Div. Aug. 18, 2009).  Petitioner appealed, and the New Jersey Supreme Court denied certification. *State v. Cross*, 29 A.3d 741 (N.J. 2011).

Thereafter, Petitioner filed a timely PCR petition, alleging that plea counsel: "(1) failed to consult with him, keep him advised of his case, or provide him with complete discovery; and (2) induced him to plead guilty by promising that the court would sentence him to a fifteen-year prison term, subject to NERA." *Cross*, 2016 WL 3389913, at *2.  In support of his filing, Petitioner certified, "I later learned that the two shots . . . I fired at the victim [were] not the cause of death, therefore, I advised [plea counsel] that I did not wish to continue with the plea." *Id.*

3

After hearing oral argument from assigned counsel and considering Petitioner's *pro se* supplemental brief, the PCR court denied the petition without holding an evidentiary hearing. *Id.* In June of 2016, the Appellate Division affirmed on PCR appeal, and the New Jersey Supreme Court denied certification in December of 2016. *State v. Cross*, 157 A.3d 851 (N.J. 2016).

Petitioner filed the instant Petition in October of 2017, (ECF No. 1.), and Respondents filed an Answer opposing relief, (ECF No. 7.). Petitioner requested and received an extension of time to file a reply, but ultimately, Petitioner did not file a reply.

The Court construes[1] Petitioner to raise the following claims:

1. He wished to withdraw his plea but the "trial court refused to allow petitioner to withdraw his plea." (ECF No. 1, at 45, ¶ 2.)

2. Counsel failed to consult with him, provide him with complete discovery, and hire an investigator to take statements from unspecified witnesses. (*Id.* at ¶ 6, 7.)

3. Counsel induced him to plead guilty by promising that the court would sentence him to a fifteen-year prison term. (*Id.* at 5.)

   a. Counsel advised him that if he "did not claim possession of the .38 caliber weapon petitioner would lose the opportunity for the plea negotiated by [his] first attorney Ms. Sorenson of 15 years serve 85%." (*Id.* at ¶ 10.)

   b. Counsel also advised that "he was facing 68 years serve 85% if found guilty [at trial], and that he could not win the case, therefore, petitioner should plead guilty." (*Id.* at ¶ 9.)

4. The plea court's sentence of twenty-eight years was excessive. (*Id.* at ¶ 11.)

---

[1] Petitioner's list of issues ostensibly lists one "ground," but contains a number of distinct arguments styled as "supporting facts." (ECF No. 1, at 45.)

## II.    STANDARD OF REVIEW

Section 2254(a) permits a court to entertain claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioners have the burden of establishing each claim in the petition. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).  Under § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts in habeas cases must give considerable deference to the determinations of state trial and appellate courts.  *See Renico v. Lett*, 599 U.S. 766, 772 (2010).

Section 2254(d) sets the standard for granting or denying a writ of habeas corpus:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Moreover, AEDPA deference applies even when there has been a summary denial.  *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011) (citation omitted).

"[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court's] decisions," as of the time of the relevant state-court decision.  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000))).  "Under the contrary to clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this [Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412–13 (internal quotation marks omitted).  As to

5

§ 2254(d)(1), a federal court must confine its examination to evidence in the record. *Cullen*, 563 U.S. at 180–81.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA apply.  First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

In addition to the above requirements, a federal court may not grant a writ of habeas corpus under § 2254 unless the petitioner has "exhausted the remedies available in the court of the State." 28 U.S.C. § 2254(b)(1)(A).  To do so, a petitioner must "fairly present all federal claims to the highest state court before bringing them in a federal court."  *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007).  This requirement ensures that state courts "have 'an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights.'"  *Id.* (citing *United States v. Bendolph*, 409 F.3d 155, 173 (3d Cir. 2005) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981)).

Even when a petitioner properly exhausts a claim, a federal court may not grant habeas relief if the state court's decision rests on a violation of a state procedural rule.  *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).  This procedural bar applies only when the state rule is "independent of the federal question [presented] and adequate to support the judgment."  *Leyva*, 504 F.3d at 365–66 (citing *Nara v. Frank*, 488 F.3d 187, 196, 199 (3d Cir. 2007)).  If a federal court determines that a claim has been defaulted, it may excuse the default only upon a showing

6

of "cause and prejudice" or a "fundamental miscarriage of justice." *Id.* at 366 (citing *Lines v. Larkins*, 208 F.3d 153, 166 (3d Cir. 2000)).

To the extent that a petitioner's constitutional claims are unexhausted and/or procedurally defaulted, a court can nevertheless deny them on the merits under 28 U.S.C. § 2254(b)(2). *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion.").

## III.    DISCUSSION

### A.  The Plea Court's Refusal to Allow Withdrawal of the Guilty Plea

First, Petitioner contends that the plea court erred by refusing to allow him to withdraw his guilty plea. (ECF No. 1, at 45, ¶ 3.)  During his sentencing hearing, Petitioner sought a more lenient sentence, alleged that it was not his intent to cause serious injury, and alleged that he was only attempting to get the victim off of his friend. (ECF No. 7-2, at 30.)  In Petitioner's view, his statements constituted a request to withdraw, and the court should have allowed him to withdraw his plea.

On habeas review, the district court must review the last reasoned state court decision on each claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal.

The Appellate Division denied the claim as follows:

> In his brief, defendant also argues that: he wished to retract his guilty plea at the time of sentencing; he told the court he did not intend to harm anyone when he fired the shots; and trial counsel was ineffective in not moving to withdraw the guilty plea "once it became apparent that [ ] defendant no longer desired to go forward with the plea." Again, however, a close reading of the sentencing transcript does not support these contentions. Rather, at the conclusion of his remarks to the court at sentencing, defendant stated: "Your Honor, I accept my plea" and "I humbly ask that you give me a more lenient sentence."

*Cross*, 2016 WL 3389913, at *5.

Here, the state court's decision was not an unreasonable application of clearly established federal law, and Petitioner has not raised a valid constitutional violation.  In fact, Petitioner's submissions fail to show that he asked to withdraw his plea.  (ECF No. 1, at 45, ¶ 3.)  Rather, those statements were in the context of seeking a lesser sentence and *accepting* his plea. (ECF No. 7-2, at 29–30.)

Indeed, in other documents, Petitioner acknowledged that "no formal motion [to withdraw his guilty plea] was ever filed," only that he "intimated" that he wanted to withdraw his guilty plea during sentencing. (ECF No. 7-6, at 6.)   Contrary to Petitioner's equivocal "intimations" at sentencing, at the beginning and end of his sentencing colloquy, Petitioner stated, "I accept my plea," and "I would like to say thank you for accepting my plea." (ECF No. 7-2, at 28:22–23, 31:19.)

In light of that record, the Appellate Division concluded that Petitioner had never asked to withdraw his guilty plea. *Cross*, 2016 WL 3389913, at *5 ("a close reading of the sentencing transcript does not support [Petitioner's plea withdrawal] contentions").  This Court must presume that that factual determination was correct and finds that Petitioner has failed to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-El*, 545 U.S. at 240.  Accordingly, based on the record above, the Appellate Division's decision was not "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

In any event, even if Petitioner had asked to withdraw his plea, "Petitioner has cited to no authority from the Supreme Court of the United States (or indeed any federal court) that would require a trial court to grant a request for withdrawal of a guilty plea based upon, at most, a bare

and equivocal assertion of innocence." *See, e.g.*, *Taylor v. Pennsylvania*, No. 16-945, 2017 WL 2841276, at *12 (W.D. Pa. July 3, 2017).

Additionally, although the Petition does not directly raise this issue, the Court will briefly address whether Petitioner entered into his plea knowingly, intelligently, and voluntarily. (ECF No. 1, at 45–47.)  On this claim, the Appellate Division observed that:

> [Defendant] told the [c]ourt that he understood he was entering a guilty plea to aggravated manslaughter.  During the plea proceedings, [defendant] told the [c]ourt that he was satisfied with his counsel and his plea arrangement, he was pleading guilty voluntarily and that he was indeed guilty of the offenses that he was charged with. [Defendant] also set forth an adequate factual basis for each of the charges against him.
>
> However, other than this bald assertion, there is nothing in the record to suggest that [defendant's] plea was anything other than knowing, intelligent and voluntary. Furthermore, [defendant] provided a thorough factual basis in order to support his plea. In this case, it appears that [defendant] is experiencing "buyer's remorse." He has little to lose and much to gain by his bald and unsupported assertion of counsel's alleged false statements.
>
> . . . .
>
> [Defendant] has made a series of claims relating to his understanding that his youth would allow the [c]ourt to sentence him below the recommendation of the prosecutor. However, these claims are belied by the record. [Defendant] was fully and clearly informed of his sentencing exposure by counsel and the [c]ourt. Under oath, [defendant] indicated his understanding of the plea bargain. There was no mention of a sentence lower than that recommended because the [c]ourt infers from the totality of the circumstances that there was no such promise or understanding that the [c]ourt would undercut the deal. In short, there is simply no evidence to support [defendant's] claim that his guilty plea should be set aside.

*Cross*, 2016 WL 3389913, at *3 (alterations in original).

The Appellate Division also considered Petitioner's "belated assertion in [his] August 1, 2009 certification that the shots he fired did not cause the victim's death." *Id.* at *4.  In that

certification, Petitioner maintained that he fired the two shots from the .22 caliber handgun, which did not cause the victim's death, instead of the fatal shot from the .38 caliber handgun. (ECF No. 7-6, at 53.)  In applying *Blackledge*, the Appellate Division held that Petitioner's bare assertions were not sufficient to rebut the presumption that he was telling the truth at his plea hearing. *Cross*, 2016 WL 3389913, at *4–5; *see generally Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

This Court has reviewed the plea transcript and plea form and concludes that they show: (1) that Petitioner clearly and explicitly discussed his case with counsel; (2) that he was ultimately satisfied with counsel's representation; (3) that no one forced or threatened him to enter into the plea; (4) that he understood that he was waiving all of his trial rights; (5) that he was in fact guilty of aggravated manslaughter; (6) that he knowingly, intelligently, and voluntarily entered into the plea agreement; (7) that he was not promised anything not contained in the plea agreement; and (8) that he knew the maximum penalty he was facing as a result of the plea. (*See* ECF No. 7-1, at 76–84; ECF No. 7-6, 27–31.)  Additionally, the plea court elicited a detailed factual basis, in which Petitioner specifically admitted that he brought the .38 caliber handgun, shot the victim with that gun, and caused the victim's death.  (ECF No. 7-1, at 81–83.)

Petitioner's belated and bare assertion, that he was lying under oath during the plea proceedings, fail to provide compelling evidence to rebut his statements at the plea hearing. Accordingly, based on the record above, this Court "concludes that Petitioner has failed to provide any evidence sufficient to overcome the presumption that the statements he made during the plea colloquy should be accepted as true." *McNeil v. Metzger*, No. 16-1083, 2020 WL 1154914, at *6 (D. Del. Mar. 10, 2020) (citing 28 U.S.C. § 2254(e)).

As a result, the Appellate Division reasonably applied *Blackledge* in holding that Petitioner was bound by his representations during the plea colloquy, and in finding that Petitioner's guilty

plea was intelligent, knowing, and voluntary.  Consequently, Petitioner is not entitled to habeas relief on these claims.

**B. Ineffective Assistance of Counsel Claims**

Next, Petitioner raises multiple claims of ineffective assistance of counsel.  The Sixth Amendment provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Cont. amend. VI.  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).  To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: 1) counsel's performance was deficient, and 2) that the deficient performance prejudiced the petitioner. *See id.* at 687.

The first *Strickland* prong is an objective standard which requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  In evaluating whether counsel was deficient, "the proper standard for attorney performance is that of reasonably effective assistance." *Id.*  The Constitution requires a fair trial, not some higher quality of legal representation. *See id.* at 688–89.  Thus, the standard is highly deferential, and courts presume that counsel has "rendered adequate assistance" and to have used "reasonable professional judgment." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

The second prong of the *Strickland* test requires that a petitioner demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  The petitioner bears the burden of demonstrating

how he was prejudiced.  Thus, where a petition contains "no factual matter . . . and only provides unadorned legal conclusion[s] . . . without supporting factual allegations, that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." *Judge v. United States*, 119 F. Supp. 3d 270, 280–81 (D.N.J. 2015) (internal quotation marks omitted) (citations omitted).

In cases involving a guilty plea, a petitioner demonstrates "prejudice" by showing that "there is a reasonable probability that, but for the counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice" courts should follow that course. *Id.*

Finally, even if a petitioner can establish both prongs of *Strickland*, a habeas corpus petition fails unless the petitioner can demonstrate that the state court applied *Strickland* in an "objectively unreasonable manner." *See Woodford v. Viscotti*, 537 U.S. 19, 24–25 (2002); *see also* 28 U.S.C. § 2254(d)(1).

## 1.  Ineffective Assistance of Counsel in Failing to Consult, Provide Discovery, and Investigate

First, Petitioner contends that plea counsel failed to adequately communicate with him, provide him with "a complete copy of his discovery," and failed to retain "the services of an investigator to obtain statements from potential witnesses." (ECF No. 1, at 46.)  Petitioner offers no further details.  The last reasoned state court decision with respect to this claim is the Appellate Division's opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR court's opinion:

12

Addressing defendant's claim that plea counsel failed to adequately communicate with him, the judge reasoned:

Trial counsel appeared on behalf of his client at least three times before the [c]ourt for the purposes of pursuing pretrial motions. Court records further reflect trial counsel's efforts to conference with his client and keep him advised of the proceedings and the evidence. Thus, [defendant's] bald assertions are plainly contradicted on the open record....

Additionally, [defendant] has not made an argument that the outcome of the trial would have been any different if trial counsel kept [defendant] more informed about the development of the case.... In this case, it is more probable that the trial would have resulted in a guilty find[ing], especially in view of the [c]ourt's ruling pertaining to the admissibility of [ ] [defendant's] statement. It was that ruling that prompted [defendant] to seek a negotiated outcome. [Defendant] was charged with murder. His trial counsel was able to obtain a favorable plea and sentence recommendation, even as the case was ready to proceed to trial after plea cut-off had occurred. See R. 3:9–3(g). After trial, [defendant] faced a minimum of [thirty] years in prison, during which he would have been ineligible for parole. He faced a maximum of life. He also faced [a] potential consecutive sentence [on] the unrelated riot charge. However, through trial counsel's diligence, he was able to obtain a plea arrangement that saved [defendant] from even greater penal exposure. As such, [defendant's] argument fails the *Strickland* test.

*Cross*, 2016 WL 3389913, at *2.

As to Petitioner's claim that counsel failed to provide or obtain discovery, the Appellate

Division added:

Defendant's contention that plea counsel failed to provide him with discovery is belied by his testimony at the plea hearing that he was aware from his review of that discovery that the shot he fired from his .38 caliber handgun caused the victim's death. That testimony also fails to support the belated assertion in defendant's August 1, 2009 certification that the shots he fired did not cause the victim's death. Moreover, defendant failed to certify with any specificity what additional discovery he did not receive and how it would have changed the outcome of the case.

*Id.* at *4.

13

With those decisions in mind, Petitioner has not shown that the state court unreasonably applied either of the *Strickland* prongs.  Like his arguments before the Appellate Division, Petitioner fails to explain how counsel failed to communicate with him, what counsel should have investigated, or what discovery counsel should have provided to him. (*See generally* ECF No. 1.)

The Petition offers only bare conclusions, and contains no evidence to support these allegations, or any explanation as to how the alleged discovery would have affected the case.  For example, Petitioner contends that counsel should have hired "an investigator to obtain statements from potential witnesses," but fails to identify those witnesses, their potential testimony, or how it might have impacted the case. (ECF No. 1, at 46, ¶ 7.)  Counsel is not  "obligated to chase after the wind . . . (*e.g.*, by striving to locate [long-shot evidence]) in hopes of stumbling upon a [piece of evidence that] might turn out favorable." *Cox v. Warren*, No. 11-7132, 2013 WL 6022520, at *6 (D.N.J. Nov. 13, 2013) (citing *Lewis v. Mazurkiewicz*, 915 F.2d 106 (3d Cir 1990) (alteration in original)), *aff'd*, 492 F. App'x 301 (3d Cir. 2012).

Additionally, even if counsel's actions fell below an objective standard of reasonableness, Petitioner has not shown that but for those errors, he would have insisted on going to trial. *Hill*, 474 U.S. at 58–59 (holding that to show prejudice a defendant must show that but for counsel's failure to investigate, defendant would not have entered a guilty plea and proceeded to trial). Indeed, he fails to make even the bare allegation that he would have pleaded not guilty and gone to trial.

That said, even if Petitioner had properly alleged that he would have gone to trial, an allegation is not enough. *United States v. Wilder*, 204 F. App'x 146, 148 (3d Cir. 2006).  There is no indication on the record that Petitioner would have gone to trial had counsel better consulted with him, investigated unknown witnesses, or provided him with unspecified discovery—

particularly in light of his incriminating statements[2] to the police.  *Cross*, 2016 WL 3389913, at *1 (noting that Petitioner pleaded guilty immediately before trial was set to commence, after the plea court denied his motion to suppress incriminating statements).  Stated differently, even if Petitioner showed that the state court unreasonably applied the first prong of *Strickland*, he has failed to show that that court unreasonably applied *Strickland's* prejudice prong.  Accordingly, for all of those reasons, Petitioner is not entitled to habeas relief on these claims.

### 2.  Ineffective Assistance of Counsel in Inducing Petitioner to Plead Guilty

Next, Petitioner appears to claim that plea counsel, Mr. Hughes, was ineffective for inducing him to plead guilty.  Petitioner contends that his first attorney, Ms. Sorenson, "advised that there was a plea offer of 15 years serve 85% but that she was removed before the plea was secured," and that his plea counsel, Mr. Hughes, advised "that if he did not claim possession of the .38 caliber weapon petitioner would lose the opportunity for the plea negotiated by . . . Ms.

---

[2] After his arrest in St. Louis, Petitioner gave several false names to the police, but ultimately, they were able to identify him through his fingerprints.  During the motion to suppress hearing before trial, the St. Louis officer described what transpired:

> A: When the agent said his name out loud and told him that he was wanted for murder in New Jersey. . . His whole body almost fell to the floor in the chair.
>
> Q. Did he make any statements at that point?
>
> A. After I mirandized him he did make a statement . . . he said, man, you got me, I've been running since 2001.  This is my life and it's a mess.
> . . . .
> Q. Would you say that again, please, for the Court?
>
> A. Man you got me.  I've been running since 2001.  This is my life and it's a mess.

(ECF No. 7-1, at 25:15 to 26:7.)

Sorenson."  (ECF No. 1, at 46, ¶¶ 5, 10.)  Petitioner also takes issue with plea counsel's assertion

that he "was facing 68 years serve 85% if found guilty, and that he could not win the case,

therefore, petitioner should plead guilty." (*Id*. at ¶ 9.)

The last reasoned state court decision with respect to this claim is the Appellate Division's

opinion on PCR appeal, which affirmed for substantially the same reasons as set forth in the PCR

court's opinion:

> Here, [defendant] told the [c]ourt that he understood he was entering
> a guilty plea to aggravated manslaughter. During the plea
> proceedings, [defendant] told the [c]ourt that he was satisfied with
> his counsel and his plea arrangement, he was pleading guilty
> voluntarily and that he was indeed guilty of the offenses that he was
> charged with. [Defendant] also set forth an adequate factual basis
> for each of the charges against him.
>
> [Defendant] now argues that he took the guilty plea under the false
> impression that he would only receive [twenty] years instead of
> [twenty-eight] years because his trial attorney told him this.
> However, other than this bald assertion, there is nothing in the record
> to suggest that [defendant's] plea was anything other than knowing,
> intelligent and voluntary. Furthermore, [defendant] provided a
> thorough factual basis in order to support his plea. *See R*. 3:9–2
> (stating that a court shall not accept a guilty plea without first
> questioning a defendant and receiving [an] adequate factual basis
> for the plea). In this case, it appears that [defendant] is experiencing
> "buyer's remorse."
>
> [ . . . .]
>
> He has little to lose and much to gain by his bald and unsupported
> assertion of counsel's alleged false statements. [Defendant] has
> made a series of claims relating to his understanding that his youth
> would allow the [c]ourt to sentence him below the recommendation
> of the prosecutor. However, these claims are belied by the record.
> [Defendant] was fully and clearly informed of his sentencing
> exposure by counsel and the [c]ourt. Under oath, [defendant]
> indicated his understanding of the plea bargain. There was no
> mention of a sentence lower than that recommended because the
> [c]ourt infers from the totality of the circumstances that *there was
> no such promise or understanding that the [c]ourt would undercut*

16

> *the deal.* In short, there is simply no evidence to support
> [defendant's] claim that his guilty plea should be set aside.

*Cross*, 2016 WL 3389913, at *3 (alterations in original) (emphasis added).

The Appellate Division added the following comments:

> Our review of the entire plea transcript and plea form leads us to
> conclude that defendant's bald assertions are belied by the record.
> Defendant was clearly informed that, while his attorney was free to
> argue for a lesser sentence, the court had the right to sentence him
> to the twenty-eight-year prison term recommended by the State. No
> "other promises or representations [were] made by . . . defense
> [counsel]," according to defendant's answer to question twenty on
> the plea form. In accepting defendant's guilty plea, the court
> specifically found that "[defendant has] not been promised anything
> outside that document which I incorporate. He understands the range
> of sentence to be imposed."

*Id*. at *4 (alterations in original).

Here, the state court's decision was not an unreasonable application of clearly established federal law.  The Appellate Division considered Petitioner's plea form which indicated that plea counsel made no other promises or representations other than those within the plea agreement. (ECF No. 7-6, at 29.)  The court also considered the plea transcript, which showed that counsel and the plea court "fully and clearly informed [Petitioner] of his sentencing exposure," and that Petitioner indicated under oath, that he understood the terms of the plea bargain. *Cross*, 2016 WL 3389913, at *3 (emphasis added).  Additionally, the court specifically found that Petitioner had "not been promised anything outside that document. . . . [and] understands the range of sentence to be imposed." *Id*. at *4.

Accordingly, the Appellate Division found "that there was no such promise or understanding that the [c]ourt would undercut the deal," and determined that Petitioner fabricated his allegations regarding the fifteen-year plea offer. *Id*.  In other words, the court found that counsel

did not induce Petitioner to plead guilty with the false promise of a fifteen-year deal.  Based on those findings, that court "concluded that . . . [Petitioner] did not establish a prima facie showing of ineffective assistance of counsel." *Id*. at *3.

This Court must presume that the state court's factual determinations were correct unless Petitioner can rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-El*, 545 U.S. at 240.  Petitioner, however, fails to offer evidence beyond his bare assertions. (ECF No. 1, at 46–47.)  For example, Petitioner could have, but failed, to obtain affidavits from his first attorney Ms. Sorensen, his plea counsel, Mr. Hughes, or even the prosecutor, in support of his alleged fifteen-year plea deal.  Indeed, the Petition lacks any specificity regarding when or how counsel conveyed these deals to Petitioner.

Critically, at the plea hearing, plea counsel mentioned Petitioner's hesitancy to accept the offer, because Petitioner wanted the better offer he received from Ms. Sorensen. (ECF No. 7-1, at 7:14–24.)  In response, the prosecutor declared:

> At no time - - I don't know where Mr. Cross is getting these ideas that he was offered a plea which would amount to manslaughter range. That never happened. I don't know what Ms. Sorenson told him. I doubt she told him that, because those words were never uttered by me.

(ECF No. 7-1, at 9:5–9.)  As a result, such statements would have further dispelled any notion that Petitioner was going to receive fifteen years as a result of the plea agreement.

For all of those reasons, Petitioner has failed to rebut the state court's factual findings by clear and convincing evidence. *Cross*, 2016 WL 3389913, at *4 (concluding that Petitioner's "bald assertions are belied by the record.").  After reviewing those records and considering the state court's findings, this Court concludes that the Appellate Division's holding was not "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2).

Additionally, Petitioner takes issue with plea counsel's statement that he would face sixty-eight years and serve 85% if found guilty at trial.[3]  Petitioner offers no further elaboration on this issue.  In any event, the plea court properly advised Petitioner that if he went to trial for murder and other charges, he "would face a life sentence." (ECF No. 7-1, at 78.)  Similarly, on PCR appeal, the Appellate Division observed that Petitioner "faced a minimum of [thirty] years in prison, during which he would have been ineligible for parole . . . [and] faced a maximum of life," at trial.  *Cross*, 2016 WL 3389913, at \*2.

Consequently, if plea counsel had offered such advice, it was within the realm of possibility.  Further, the plea court properly advised Petitioner that he faced even greater exposure, life in prison, which cured any defect as to Petitioner's maximum exposure at trial. *See, e.g.*, *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) (finding that an adequate plea hearing can cure counsel's deficient performance with regard to sentencing exposure); *United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (finding that counsel was not ineffective after defendant had been advised in an open-court colloquy of the potential maximum sentence and there were no other promises regarding sentence).

Alternatively, even if counsel's performance were deficient, Petitioner makes no allegation that he would have gone to trial had he known of the *greater* sentencing exposure at trial.  Indeed, as discussed above, there is no indication or allegation in the record that Petitioner would have gone to trial.

_____

[3] Petitioner does not appear to have exhausted this claim, *i.e.*, presented to each level of the state courts for review.  Nevertheless, this Court may excuse the failure to exhaust and deny that claim on the merits. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). *See, e.g.*, *Carrascosa v. McGuire*, 520 F.3d 249, 255 n.10 (3d Cir. 2008); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007).

Accordingly, Petitioner fails to show that the Appellate Division unreasonably applied either prong of *Strickland*, and he is not entitled to habeas relief on these claims. *Hill*, 474 U.S. at 58–60 (holding that to establish prejudice, defendant would have to show that he would not have pleaded guilty and proceeded to trial).

### 3. Ineffective Assistance of Counsel in Failing to File a Motion to Withdraw Guilty Plea

Finally, although Petitioner does not appear to directly[4] raise the issue, the Court will briefly address the issue of whether counsel was ineffective for failing to file a motion to withdraw his guilty plea. (ECF No. 1, at 45–47.)  Petitioner had raised the issue during his PCR appeal. (ECF No. 7-6, at 12.)

As discussed above, Petitioner acknowledged that "no formal motion [to withdraw his guilty plea] was ever filed," only that he "intimated" that he wanted to withdraw his guilty plea during sentencing.  (ECF No. 7-6, at 6.)  Petitioner emphasized that at sentencing he said, "I think that [I] can establish that my intent was never to cause any serious[] bodily injury." (*Id.* (quoting ECF No. 7-2, at 30:4–5; ECF No. 7-6, at 12).  He also stated, "Your Honor, I would like to state that I never intended to harm anyone" that night. (ECF No. 7-2, at 29:4–6.)  Nevertheless, at the beginning and end of that colloquy, Petitioner stated, "I accept my plea," and "I would like to say thank you for accepting my plea." (ECF No. 7-2, at 28:22–23, 31:19.)

On this issue, the Appellate Division wrote:

> In his brief, defendant also argues that: he wished to retract his guilty plea at the time of sentencing; he told the court he did not intend to harm anyone when he fired the shots; and trial counsel was ineffective in not moving to withdraw the guilty plea "once it

---

[4] The Petition does not directly contest plea counsel's failure to file a motion to withdraw, but does state that Petitioner "advised the court that he wished to withdraw his plea," and that plea counsel "failed to comply with any of his requests." (ECF No. 1, at 45, ¶¶ 3, 7.)

> became apparent that [ ] defendant no longer desired to go forward with the plea." Again, however, a close reading of the sentencing transcript does not support these contentions. Rather, at the conclusion of his remarks to the court at sentencing, defendant stated: "Your Honor, I accept my plea" and "I humbly ask that you give me a more lenient sentence."

In other words, the Appellate Division concluded that Petitioner had never asked to withdraw his guilty plea and did not wish to withdraw his plea—at least until after he received his sentence. *Cross*, 2016 WL 3389913, at *3, *5 (finding that "a close reading of the sentencing transcript does not support [defendant's plea withdrawal] contentions," and that "it appears that [defendant] is experiencing 'buyer's remorse.'"). This Court must presume that that factual determination was correct and finds that Petitioner has failed to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-El*, 545 U.S. at 240.

Alternatively, even if Petitioner had requested to withdraw his guilty plea, the Appellate Division reasoned:

> we further conclude that plea counsel's failure to file a motion to withdraw defendant's guilty plea did not constitute ineffective assistance of counsel or result in prejudice to defendant. In all plea withdrawal cases, "the burden rests on the defendant, in the first instance, to present some plausible basis for his request, and his good faith in asserting a defense on the merits." *State v. Slater,* 198 N.J. 145, 156 (2009). "Generally, representations made by a defendant at plea hearings concerning the voluntariness of the decision to plead, as well as any findings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." *State v. Simon,* 161 *N.J.* 416, 444 (1999) (quoting *Blackledge v. Allison,* 431 *U.S.* 63, 74, 97 *S.Ct.* 1621, 1629, 52 *L. Ed* .2d 136 (1977)).
>
> A trial court must consider and balance four factors when evaluating a motion to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." *State v.*

> *Munroe,* 210 *N.J.* 429, 442 (2012) (quoting *Slater, supra,* 198 *N.J.*
> at 157–58). "No single *Slater* factor is dispositive; 'if one is missing,
> that does not automatically disqualify or dictate relief.' " *State v.*
> *McDonald,* 211 *N.J.* 4, 16–17 (2012) (quoting *Slater, supra,* 198
> *N.J.* at 162).
>
> While we are certainly cognizant of all the *Slater* factors,
> importantly, defendant has not asserted a colorable claim of
> innocence. Rather, in his August 1, 2009 certification, he admits
> firing two shots at the victim. Such conduct bespeaks the very
> degree of reckless behavior "manifesting extreme indifference to
> human life" that supports an aggravated manslaughter
> conviction. *See N.J.S.A.* 2C:11–4. Notably, in pleading guilty to
> manslaughter, as amended from knowing or purposeful murder,
> defendant acknowledged "an extreme indifference to the value of
> human life to point what may have been a loaded gun at someone
> and pull the trigger."
>
> Where a defendant asserts his or her attorney was ineffective for
> failing to file a motion, he or she must establish that the motion
> would have been successful. Defendant has not met that burden
> here. "It is not ineffective assistance of counsel for defense counsel
> not to file a meritless motion [.]" *State v. O'Neal,* 190 *N.J.* 601, 619
> (2007).

*Cross,* 2016 WL 3389913, at *5–6 (alterations in original) (citations omitted).

The Appellate Division's denial of this claim was not an unreasonable application of

*Strickland.* In particular, the Appellate Division emphasized that Petitioner failed to assert a

colorable claim of innocence, a critical factor in filing a motion to withdraw. The court noted that

even in Petitioner's new version of the events, he still fired two bullets into the victim while

manifesting "an extreme indifference to the value of human life." *Id.* at 5.

As a result, assuming *arguendo* that Petitioner "lacked intent to kill," he pleaded guilty to

aggravated manslaughter which only required that he "recklessly caus[ed] death under

circumstances manifesting extreme indifference of human life." N.J.S. § 2C:11-4a. Stated

differently, intent to kill was not a requirement of aggravated manslaughter, and the lack thereof

would not have rendered him innocent. *Id.*

Additionally, unlike the defendants in *Slater* and *Munroe*, nearly every relevant fact in Petitioner's new version of events contradicted his testimony during the plea colloquy.  More specifically, Petitioner alleged that: (1) he fired two shots, instead of one; (2) used the .22 caliber handgun, instead of the .38 caliber handgun; (3) never possessed the .38 caliber handgun, instead of bringing it with him on the night in question; and (4) did not fire the fatal shot, rather than firing the fatal shot that penetrated the victim's left lung, heart, and liver, causing the victim's death.  (*Compare* ECF No. 7-1, at 81:1 to 83:7, *with* ECF No. 7-6, at 50–53.)

Consequently, the Appellate Division's conclusion that Petitioner failed to assert a colorable claim of innocence, was not based on an unreasonable determination of the facts. *See State v. Williams*, 2018 WL 3384271, at *6 (N.J. Super. Ct. App. Div. July 12, 2018) (finding that "a claim of innocence is more likely to be deemed 'colorable' if it does not directly, or completely contradict the factual admissions in the initial allocution of guilt").

In turn, the Appellate Division properly applied *Strickland*, when it held that counsel was not ineffective for failing to bring a meritless motion. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (citation omitted).  For all of those reasons, Petitioner is not entitled to habeas relief on this claim.

## C.  Excessive Sentence

Finally, Petitioner appears to generally contend that his sentence of twenty-eight years with an 85% parole disqualifier was excessive.  A federal court's ability to review state sentences is limited, however, to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies." *See Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J.1987) (citation omitted).  Thus, federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional

limitation. *See Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir.1984); *see also* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

"The Eighth Amendment, which forbids cruel and unusual punishments contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). The Supreme Court has identified three factors to determine whether a sentence is so disproportionate to the crime that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 463 U.S. 277, 292 (1983).

The first factor acts as a gateway prong to the proportionality inquiry. The Eighth Amendment, after all, only forbids sentences that are "grossly disproportionate" for a conviction for the crime involved. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at *16–17 (D.N.J. Mar. 28, 2018). If the petitioner fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge is at an end. Successful proportionality challenges in non-capital cases are "exceedingly rare." *Ewing*, 538 U.S. at 21 (quoting *Rummel v. Estelle,* 445 U.S. 263, 272 (1980)); *United States v. Burnett*, 773 F.3d 122, 136–37 (3d Cir. 2014).

"Absent colorable allegations that his sentence constitutes cruel and unusual punishment . . . or that it is arbitrary or otherwise in violation of due process, the legality and length of his sentence are questions of state law," over which this Court has no jurisdiction. *E.g.*, *Rabaia v. New Jersey*, No. 15-4809, 2019 WL 699954, at *12–13 (D.N.J. Feb. 20, 2019) (citing *Chapman v. United States,* 500 U.S. 453, 465 (1991)).

In this case, Petitioner fails to allege or explain how his sentence violates any federal constitutional rights.  The plea court sentenced Petitioner to twenty-eight years imprisonment for first degree aggravated manslaughter, which was below the statutory limit of thirty years. N.J. Stat. § 2C:11-4(c) (providing for an ordinary term between ten and thirty years).  "Generally, a sentence within the [statutory] limits . . . is neither excessive nor cruel and unusual under the Eighth Amendment."  *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011).

Nor does Petitioner's sentence of twenty-eight years rise to the level of disproportionality that violates the Eighth Amendment. *Accord Bishop v. New Jersey*, No. 16-9178, 2018 WL 4198884, at *12 (D.N.J. Aug. 31, 2018) (finding that petitioner's sentence of twenty-four years for aggravated manslaughter did not rise to the level of disproportionality under the Eighth Amendment).  Petitioner did, after all, acknowledge "an extreme indifference to the value of human life to point what may have been a loaded gun at someone and pull the trigger," which caused the victim's death.  *Cross*, 2016 WL 3389913 at *5; *see also* (ECF No. 7-2, at 30:21 to 25; ECF No. 7-1, at 81:25 to 82:25).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

### D.  Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003).  Applying that standard, this Court finds that a certificate of appealability shall not issue.

### IV.    CONCLUSION

For the foregoing reasons, the Court will deny the Petition and will not issue a certificate

of appealability.  An appropriate order follows.


DATED:   April 9, 2021

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge
